UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL GRELLNER, individually and doing bussiness as Venacore, Inc., <br><br> Plaintiff, <br><br> v. <br><br> RODNEY D. RAABE, SAPHEON INC., SAPHEON LLC, COVIDIEN HOLDING INC., COVIDIEN LP, COVIDIEN SALES LLC, <br><br> Defendants. | No.  2:15-CV-0189-SMJ <br><br> **ORDER DENYING MOTION TO DISMISS** |

Before the Court, with oral argument, is Defendant's Motion to Dismiss. ECF No. 52. Having reviewed the pleadings and the file in this matter, the Court is fully informed and denies Defendant's motion.

I.     Factual Background[1]

Plaintiff Grellner first met Defendant Raabe at a trade show in 1999. As early as July 2005, Grellner conceived VeinBond. VeinBond is described in detail in the FAC as, among other things, a method designed to treat persons with

---

[1] The "factual background" section is based on the Complaint's, ECF No. 1, and Amended Complaint's, ECF No. 8, factual allegations, which are assumed true at this time, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

ORDER **-** 1

varicose veins that utilizes an *in vivo* delivery method such as a gun-like device connected to a catheter to inject medical glue into the veins.

The FAC asserts that Grellner and Raabe entered into a verbal agreement in April 2008 wherein Raabe orally agreed to be Grellner's partner, co-founder, and Chief Medical Advisor of Venacore. The FAC alleges that this agreement was ratified by a written and signed July 11, 2008 agreement, attached as Exhibit 1 to the FAC. Plaintiff claims that pursuant to this alleged partnership Defendant Raabe "began to learn every detail of Plaintiff's Technology and Intellectual Property," and allegedly stole Grellner's intellectual property related to the VeinBond Varicose Vein System.

II. <u>Dismissal Standards</u>

A Rule 12(b)(6) motion to dismiss for failure to state a claim questions whether the plaintiff's claims satisfy Rule 8(a)'s pleading standards. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is [plausibly] entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (setting forth the plausibility standard). Plausibility does not require a probability of success on the merits; instead it requires "more than a sheer possibility" of success on the merits. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether the complaint contains a statement showing that the

ORDER **-** 2

pleader is plausibly entitled to relief, the court first identifies the elements of the plaintiff's claim and then determines whether those elements can be proven on the alleged facts. *Id.* at 663. When conducting this analysis, the court accepts the alleged factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff. *Id*.

III. <u>Analysis</u>

Defendant argues that Plaintiff's complaint is insufficiently plead for three primary reasons: (1) there was no breach of a fiduciary duty because no partnership ever exists, (2) a contract was never formed between the parties, (3)VeinBond is not a trade secret because of a prior patent application.

The Court finds the FAC's claims are sufficiently plead, and met the plausibility standard established in *Iqbal*.

**A. Partnership Formation**

Defendant argues that the parties never entered into a partnership because the parties instead contemplated an "at-will" advisory role.

Indeed, the 2008 written agreement between Grellner and Raabe includes language that may suggest that the parties intended to create an advisory role that was "at will". ECF No. 9, Exh. 1 ("Your role as an Advisor is for no specified period and is completely "at will". As a result, you are free to terminate the relationship at any time, for any reason, or for no reason. Similarly, the Company

is free to terminate the relationship with you at any time, for any reason, or for no reason.")

Defendant argues this language proves that Dr. Raabe was to be an "at-will" advisor who would be compensated for services to be provided to a corporation, "Venacore, Inc."— not a partner in a partnership.

Conversely, Plaintiff alleges that the parties intended Defendant to be a physician advisor and partner. Plaintiff alleges that he and Defendant Raabe verbally agreed at a 2008 meeting that Defendant Raabe would join Venacore as a partner, co-founder, and chief medical advisor. He also alleges that Defendant Raabe conducted himself as a partner—by making presentations on the corporation's behalf and putting himself out to others as part-owner of the corporation.

Under Washington law, a partnership is formed by "the association of two or more persons to carry on as co-owners a business for profit." RCW § 25.05.055(1). It is well established law that partnerships may be formed regardless of whether a person intended to form a partnership. RCW §25.05.055(1). Existence of a partnership depends on fact questions. *Stipich v. Marinovich*, 13 Wn.2d 155, 159-60 (1942).

Whether two people have entered into a partnership is a fact intensive inquiry, and the Defendant's arguments are more appropriately made a summary

ORDER - 4

1  judgment stage. At this stage in the litigation, Grellner has plead enough to find

2  that it was plausible that the parties entered into a partnership. And a seemingly-

3  contrary contract between the parties does not foreclose the possibility of the

4  parties entering into a verbal partnership.

5      Defendant's motion is denied on this ground.

6      **B. <u>Contract Formation</u>**

7      Defendant argues that the FAC fails to plead the existence of a valid

8  contract because there was not valid consideration. Defendant contends that the

9  FAC establishes a lack of consideration because payment was to be in the form of

10 stock in an unformed company.

11     A valid contract, written or oral, requires an offer, acceptance, and

12 consideration. *Kuest v. Regent Assisted Living, Inc.*, 111 Wn. App. 36, 50 (2002).

13 The Court finds that there was a valid contract. Without authority, Defendants

14 argue that shares of stock in an unformed company cannot be consideration. This

15 misstates the consideration exchanged, which was Grellner's *promise* to

16 "*recommend* to the Board of Directors…that the Company grant [Raabe] 449,500

17 shares of restricted Common Stock." Moreover, Defendants' argument concerns

18 the "adequacy of consideration," which courts do not generally consider.

19 *Columbia Basin*, 1999 Wash. App. LEXIS 2021, at *16 (holding courts evaluate

20

ORDER **-** 5

consideration for "legal sufficiency" which is "concerned not with comparative value but with that which will support a promise").

The Defendant's motion is denied on this ground.

### C. <u>Trade Secret</u>

Defendant argues that Plaintiff cannot allege any claims based on trade secret because no protectable secret existed.

A plaintiff asserting a trade secret claim bears the burden of "proving that legally protectable secrets exist." *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 50 (1987). Washington State defines a trade secret in relevant part as information that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons." RCW § 19.108.010(4). In other words, a trade secret must be a secret that is valuable because it is a secret.

Thus, to be a protectable trade secret, Plaintiff's Vein Bond invention must derive independent economic value from not being generally known or readily ascertainable by proper means. RCW § 19.108.010(4)(a).

Defendant contends that there was no protectable secret because the information was publically disclosed by March 9, 2006 in the Mirizzi Publication. ECF No. 9, Exh. 2.

To resolve the issues of whether the Mirizzi Publication forecloses Plaintiff's trade secret claim the Court would need to engage in an intensive factual inqury. The Court would need to, for instance, compare patent applications to Plaintiff's Vein Bond invention. This would likely require expert testimony. This level of inquiry is clearly beyond the scope of a motion to dismiss on 12(b)(6) grounds.

The Defendant's motion is denied on this ground.

### D. <u>Additional Arguments</u>

Beyond Defendant's three main arguments, Defendant also argues that the following claims should be dismissed: fraud; correction of inventorship; and tortious interference with contract.

*Fraud*: Plaintiff sufficiently alleges fraud. Plaintiff alleges that he acted on Raabe's presentations that he would assign all intellectual property that was useful to Venacore. Plaintiff alleges that Raabe made this representation with the knowledge that he never intended to do so, and knowing that he actually intended to steal Plaintiff's intellectual property instead. A promise of future performance is fraudulent if made without the intent to preform it. *Mastaba, Inc. v. Lamb Westin Sales, Inc.,* 23 F.Supp. 3d 1283, 1293 (E.D. Wash. 2014). Plaintiff's allegations meet the standard for pleading at his point in the litigation.

*Correction of inventorship.* Plaintiff sufficiently alleges this claim. At this stage in the litigation Plaintiff is not requires to plead with the level of specificity that Defendants seek.

*Tortious interference.* Defendant argues that Plaintiff's tortious interference claim against Sapehon fails because there is no partnership, no valid contract, and no trade secret. Because we have determined that Plaintiff sufficiently alleged these claims, this argument also fails.

Accordingly, **IT IS HEREBY ORDERED**: Defendant's Motion to Dismiss, **ECF No. 52**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 15th day of July 2016.

_____
SALVADOR MENDOZA, JR.
United States District Judge